IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 08–cv–01788–WYD–KMT

ARAPAHOE COUNTY WATER AND WASTEWATER PUBLIC IMPROVEMENT DISTRICT and
ARAPAHOE COUNTY WATER AND WASTEWATER AUTHORITY,

    Plaintiffs,

v.

HDR ENGINEERING, INC.,

    Defendant.

_____

## ORDER
_____

    This matter is before the court on Plaintiffs' "Motion for Leave to Amend Complaint" ([Doc. No. 25] [filed July 15, 2009] [hereinafter "Mot."]). On August 26, 2009, this court ordered Defendant to file a Response to the Motion (Doc. No. 28), and Defendant did so on September 2, 2009 ([Doc. No. 30] [hereinafter "Resp."]). Plaintiffs filed the Reply on September 10, 2009. ([Doc. No. 34] [hereinafter "Reply"].) Plaintiffs seek to amend the Complaint in order to assert two new claims and add a request for punitive damages. (Mot.; Proposed First Amended Complaint [hereinafter "PFAC"].)

    Plaintiffs claim that on July 14, 2004 they entered into a contract with Defendant for the completion of the Chaparral Pump Station Project (hereinafter "Chaparral Project"). (Compl. at 2.) The original complaint asserted claims for breach of contract and negligence arising out of

Defendant's allegedly faulty completion the Chaparral Project. (*Id.*) Plaintiffs now state that on July 15, 2004 they entered into another contract with Defendant for the completion of the Lloyd Wells Project. (PFAC at 5.) Plaintiffs claim that during the course of discovery on the Chaparral claims, an e-mail message was uncovered allegedly showing that Defendant intentionally overbilled Plaintiffs for its services on both projects. (Mot. at 2.) Based on this evidence, Plaintiffs seek to add a claim for breach of the Lloyd Wells contract (PFAC at 5) and one for Intentional Misrepresentation regarding both the Chaparral and Lloyd Wells contracts (*id.* at 7), and a request for punitive damages.

## 1.     *Rule 15*

Pursuant to Federal Rule of Civil Procedure 15(a), the court is to freely allow amendment of the pleadings "when justice so requires." The grant or denial of an opportunity to amend is within the discretion of the court, but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). The Tenth Circuit has concluded that the timeliness of the amendment and prejudice to the defendant are to be the crux of the inquiry. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

Defendant contends that "Plaintiffs' delay in moving to amend the Complaint will, if granted, prejudice [Defendant]." (Mot. at 5–7; Resp. at 5.) While "[p]rejudice and timeliness are obviously closely related," the court will evaluate each separately. *Minter*, 451 F.3d at 1205.

### A.     *Undue Prejudice*

According to the Tenth Circuit, "the most important[] factor in deciding a motion to amend the pleadings[] is whether the amendment would prejudice the nonmoving party." *Minter*, 451 F.3d at 1207; 6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990) ("Perhaps the most important factor listed by the Court and the most frequent reason for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter his pleading."). As a general rule, a plaintiff should not be prevented from pursuing a valid claim, provided "that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits." *Minter*, 451 F.3d at 1207–08.

"Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment." *Id.* at 1208 (citing *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.* (comparing *Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996) (finding prejudicial a motion "to add an entirely new and different claim to [the plaintiff's] suit little more than two months before trial"), *with Gillette v. Tansy*, 17 F.3d 308, 313 (10th Cir. 1994) (finding no evidence of prejudice when the "Petitioner's [amended] claims track the factual situations set forth in his [original] claims")). "The burden of proof to show prejudice is on the party opposing

the amendment of the pleadings." *Britton v. Car Toys, Inc.*, 2006 WL 4525699, at *5 (D. Colo. 2006) (Daniel, J.); *see Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 540 (8th Cir. 1977).

While the new claims appear to arise out of a different subject matter regarding the Lloyd Wells project and raise new factual issues, Defendant has failed to show how or why this unfairly affects its ability to prepare a defense to the new allegations. *See Minter*, 451 F.3d at 1208. In fact, the new allegations appear to overlap, to a certain extent, the previous allegations since Plaintiffs are alleging intentional overbilling on both projects which were ongoing during the same period of time. Defendant claims that allowing the amendments will "require the parties to obtain expert witnesses," causing "significant delay as the parties conduct discovery, prepare expert disclosures, and depose the expert witnesses," resulting in "extra time and effort . . . [and] increased cost[s] of litigation." (Resp. at 7.) Joinder of the claims is valid pursuant to Fed. R. Civ. P. 18 and costs would be incurred whether the claims were added to this action or brought in a separate case. Defendant has failed to show how or why such prejudice is undue.

### B. Undue Delay

The deadline to amend pleadings in this matter was January 30, 2009 (*see* Sched. Ord. at 5 [Doc. No. 5]), and there have been no extensions sought or granted with regard to this deadline. Plaintiffs filed the Motion to Amend the Complaint on July 15, 2009. (Doc. No. 25.) Therefore, Plaintiffs' Motion is untimely.

Although the Supreme Court listed "undue delay" as one of the justifications for denying a motion to amend, *Foman*, 371 U.S. at 182, "[l]ateness does not of itself justify the denial of the amendment." *Minter*, 451 F.3d at 1205 (citing *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749,

751 (10th Cir. 1975)). "Rule 15(a) does not restrict a party's ability to amend its pleadings to a particular stage in the action." *Id.* (citing Fed. R. Civ. P. 15(a); 6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1488 (2d ed. 1990)). "However, a party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time." *Id.* "The longer the delay, 'the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.'" *Id.* (citing *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)).

When a party asserts undue delay as a justification for denying a motion to amend, courts in the Tenth Circuit "focus[] primarily on the reasons for the delay." *Id.* at 1206 (citing *Frank v. U.S. West*, 3 F.3d 1357, 1365–66 (10th Cir. 1993); *Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994) ("[U]nexplained delay alone justifies the district court's discretionary decision."). "Courts have denied leave to amend in situations where the moving party cannot demonstrate excusable neglect. For example, courts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend." *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987). Furthermore, "[c]ourts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint 'a moving target,' to 'salvage a lost case by untimely suggestion of new theories of recovery,' to present 'theories seriatim' in an effort to avoid dismissal, or to 'knowingly delay[ ] raising [an] issue until the eve of trial.'" *Minter*, 451 F.3d at 1206 (internal citations omitted).

Plaintiffs claim that on December 10, 2008, Defendant disclosed approximately 80,000 pages of documents, and that "Plaintiffs were unable to review the entirety of the approximately 80,000 pages of documents disclosed by [Defendant] . . . until after the passage of the [January 30, 2009] deadline [to amend pleadings]." (Mot. at 2.) Plaintiffs maintain that upon review of Defendant's disclosures, Plaintiffs discovered the e-mail message that forms the basis of their proposed amendments. (*Id.*) According to Plaintiffs, the e-mail was discovered at some point before the March 16, 2009 deposition of Jennifer Stillman.[1]  After Ms. Stillman's deposition, "Plaintiffs submitted written discovery to [Defendant] requesting documentation regarding the billing and timekeeping on the project in an effort to determine . . . [if] there was factual support for a new claim based on the perceived overbilling." (Reply at 4.) According to Plaintiffs, "[o]n June 12, 2009, [Defendant] provided its answers to the written discovery, refusing to provide the requested documents based upon its objection that the information requested 'exceeds the scope of discovery allowed in this matter and is not reasonably calculated to lead to the discovery of admissible evidence.'" (*Id.*; *see* Ex. A.) After conferring with Defendant on June 18, 2009 (*id.*), Plaintiffs filed the present Motion on July 15, 2009.

Defendant does not argue, and there is no indication, that Plaintiffs are using Rule 15 to make the Complaint "a moving target," to "salvage a lost case by untimely suggestion of new theories of recovery," to present "theories seriatim" in an effort to avoid dismissal, or to

---

[1] According to Defendant, Ms. Stillman was deposed on March 16, 2009. (Resp. at 5.) Plaintiffs' Response states that Plaintiffs' submitted written discovery to Defendant regarding billing issues "[a]fter the e-mail regarding the overbilling was discovered and Ms. Stillman was questioned about it during her deposition." (Reply at 4.)

6

"knowingly delay[ ] raising [an] issue until the eve of trial." *See Minter*, 451 F.3d at 1206. Defendant's Response is silent as to the adequacy of the reasons put forward by Plaintiffs to explain their delay in filing the present motion. Rather, Defendant focuses on the burdens it faces if the proposed amendments are allowed as outlined in subsection 1(A) herein. However, not only does this line of argument miss the point, Defendant has failed to show *undue* prejudice due to delay would result. In light of the large volume of documents disclosed by Defendant, this court finds Plaintiffs' justification for their untimely filing adequate under these circumstances.

### C. Futility

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson County Sch. Dist. v. Moody's Investor's Services*, 175 F.3d 848, 859 (10th Cir. 1999); *see also Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992). To withstand a motion to dismiss, the complaint, when taken in the light most favorable to the plaintiff, "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). Consequently, the issue in resolving a motion to amend, when futility of amendment is argued, is "'not whether [the] plaintiff will ultimately prevail, but whether the claimant is

entitled to offer evidence to support the claims.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### i.     *Economic Loss Rule*

Defendant contends Plaintiffs' amendments are futile because the "economic loss rule bars Plaintiffs' claims for intentional misrepresentation and negligence[2]." (Resp. at 3.) Pursuant to Colorado law, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 2009 WL 1152160, at *5 (Colo. App. 2009) (citing *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000)). "'A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie. A breach of a duty arising independently of any contract duties between the parties, however, may support a tort action.'" *Id.* (quoting *Town of Alma*, 10 P.3d at 1262). "'The key to determining the availability of a contract or tort action lies in determining the source of the duty that forms the basis of the action.'" *Id.* (quoting *Town of Alma*, 10 P.3d at 1262).

Defendant characterizes the duty at issue here as a "duty to produce accurate billings." (Resp. at 4.) According to Defendant, such a duty did not exist independently of the parties' contracts, but existed here "only because of [Defendant's] contract with Plaintiffs." (*Id.*)

---

[2] The negligence claim, Claim Two in the original Complaint is now designated as Claim Three in the PFAC. Defendant did not challenge this claim in a Fed. R. Civ. P. 12 Motion to Dismiss. Therefore, an objection to inclusion of the negligence claim in the PFAC is inappropriate.

8

Defendant cites to the parties' contract, arguing it "contained the standard of care for all professional engineering and related services performed or furnished by [Defendant]." (*Id.* at 3–4.)  Pursuant to this theory, Plaintiffs would be entitled to claim only economic damages, i.e. the value of the amount overbilled.  On this basis, Defendant claims that Plaintiffs' proposed claim for intentional misrepresentation is barred by the economic loss rule and therefore futile. (*Id.*)  Plaintiffs, on the other hand, characterize the duty at issue as "the duty to refrain from fraud." (Reply at 2.)  According to Plaintiffs, "the obligation to refrain from engaging in conduct that would give rise to a claim of fraudulent representation is one implied at common law regardless of any contractual relationship." (*Id.*)  Plaintiffs also cite to the parties' contracts, arguing their silence as to "specific remedies afforded in the event of an overbilling" evidences the independent existence of the duty to refrain from fraud. (*Id.* at 3.)

Whether the economic loss rule bars Plaintiffs' intentional misrepresentation claim cannot be resolved at this stage of the proceedings.  The ultimate resolution of this issue will depend, in part, on the interpretation given to the terms of the parties contracts.  To the extent the contracts may be ambiguous, extrinsic evidence will be required to resolve the issue.  *See Stegall v. Little Johnson Associates, Ltd.*, 996 F.2d 1043, 1048 (10th Cir. 1993) ("If the court determines a contract is ambiguous and its construction depends on extrinsic evidence, then interpretation of the contract becomes a question of fact.").  The evidence presently before the court is insufficient to justify a ruling that the PFAC is legally insufficient to state a claim for which relief may be granted or that it is futile based on the economic loss rule.

### ii. *Pleading Requirements Pursuant to Fed. R. Civ. P. 9*

Plaintiffs' claim for Intentional Misrepresentation reads as follows:

29. Upon information and belief, [Defendant] misrepresented the hours worked by [Defendant] on the [Chaparral] Project and the Lloyd Well Project and invoiced for hours not actually worked by [Defendant] employees on the [Chaparral] Project and the Lloyd Well Project.

30. [Plaintiffs] relied upon the misrepresentations of [Defendant] contained in the invoices and paid [Defendant's] invoices in reliance upon said misrepresentations.

31. It was reasonable for [Plaintiffs] to have relied upon [Defendant's] misrepresentations.

32. [Plaintiffs] have been damaged by the amount that was overpaid to [Defendant] based upon the misrepresentations.

(PFAC at 8.) In support of these amendments, Plaintiffs rely on an e-mail message prepared by Defendant, which states, in part:

> We have submitted fee amendment requests to ACWWA in the amounts of $19,800 for Loyd [sic] and $18,700 for Chapparal. These amounts represent the fee increases necessary to make our profit goals on the projects, and not our actual costs to complete the jobs. Assuming ACWWA signs off on the amendments, **we will need to be strategic about invoicing both projects in order to bill the full fee. Specifically, we will need to add hours to our invoices since our actual hours will not allow us to bill the full amendment amounts.**

(Mot. at 2.) (emphasis added). Clearly, the plaintiffs have set forth a claim for relief. Additionally, under Fed. R. Civ. P. 9, although the evidence is concise, the claim "state[s] with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). The allegation is that defendant engaged in a willful and planned practice of billing more hours than were actually worked on both projects in order to fraudulently maximize their invoices.

## 2.     *Exemplary Damages*

Plaintiffs also seek to amend the Complaint in order to add a request for punitive damages. Defendant states that "Plaintiffs' addition of 'punitive damages' in their prayer for relief falls far short of the pleading requirements of C.R.S. 13-21-102." (Resp. at 5.) Defendant neither explains those requirements nor cites to any case law doing so. Nevertheless, the court considers whether Plaintiffs have satisfied the requirements of § 13-21-102.

Under Colorado law, exemplary damages are only appropriate if "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. § 13-21-102(1)(a). "A claim for exemplary damages . . . may be allowed by amendment to the pleadings only after the exchange of initial disclosures . . . and the plaintiff establishes *prima facie* proof of a triable issue." Colo. Rev. Stat. § 13-21-102(1.5)(a). "The existence of a triable issue on punitive damages may be established through discovery, by evidentiary means, or by an offer of proof." *Leidholt v. District Court in and for the City and County of Denver*, 619 P.2d 768, 771 (Colo. 1980). Plaintiffs must articulate "[a] reasonable likelihood that the issue will ultimately be submitted to the jury for resolution," in order to demonstrate the requisite *prima facie* proof of a triable issue. *Id.*

The term "fraud," as used in the statute, follows the common definition of "a false representation of a material existing fact, made with knowledge or utter disregard of its falsity, with the intent to induce another to rely upon the representation and to take detrimental action thereon." *Palmer v. A.H. Robins Company, Inc.*, 684 P.2d 187, 214–215 (Colo. 1984). Thus, in order for Plaintiffs' Amended Complaint seeking punitive damages to be proper, Plaintiffs must

11

have articulated a reasonable likelihood that the issue of whether Defendant made a false representation of a material existing fact, with knowledge or utter disregard of its falsity, with the intent to induce Plaintiffs to rely upon the representation and to take detrimental action thereon, will ultimately be submitted to the jury for resolution. *See id.*

At this stage of the litigation, the court is concerned only with whether the evidence, when viewed in the light most favorable to Plaintiffs, is sufficient to make out a *prima facie* case of fraudulent circumstances[3] for the purpose of amending the Complaint to seek exemplary damages, and not whether such evidence is sufficient to defeat summary judgment. *See American Econ. Ins. Co. v. William Schoolcraft, M.D., P. C.*, 2007 WL 160951, at *2 (D. Colo. 2007). In light of the forgoing, the court finds that Plaintiffs have satisfied the pleading requirements of Colo. Rev. Stat. § 13-21-102 and, therefore, the proposed amendment adding a claim for punitive damages is permissible.

**WHEREFORE**, for the foregoing reasons,

---

[3] In Colorado, "[t]he elements of 'circumstances of fraud' are identical with the necessary elements of fraud." *Amber Properties, Ltd. v. Howard Elec. and Mech. Co., Inc.*, 775 P.2d 43, 46 (Colo. App. 1988).

Plaintiffs' "Motion for Leave to Amend Complaint" (Doc. No. 25) is **GRANTED**. The Clerk of Court is directed to file the "First Amended Complaint," currently attached to the Motion as Doc. No. 25-2.

Dated this 25th day of September, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge